IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DETERTORING SANDERS, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | No. 14 C 1432 |
| ) | |
| ALLAN MARTIN, Warden, ) | |
| Shawnee Correctional Center, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

In 2010, following a bench trial, an Illinois judge convicted Detertoring Sanders on a charge under Illinois's armed habitual criminal statute and sentenced him to ten years in prison. Sanders appealed, arguing that the evidence used against him at trial was obtained as the result of an illegal traffic stop. The Illinois Appellate Court affirmed the conviction and sentence, and the Illinois Supreme Court denied Sanders's petition for leave to appeal. Sanders then filed a *pro se* petition for post-conviction relief in state court, alleging among other things that the state had destroyed evidence favorable to him in violation of his due process rights. The circuit court summarily dismissed the petition; the appellate court affirmed; and the Illinois Supreme Court denied Sanders's petition for leave to appeal.

On February 27, 2014, Sanders filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In the petition, Sanders alleges that the state violated his due process right to a fair trial by destroying evidence that would have been favorable to

1

him. For the following reasons, the Court denies Sanders's petition.

## Background

**A.     State court proceedings**

Sanders was arrested on the evening October 5, 2008 and was charged under the armed habitual criminal statute, which imposes enhanced penalties for possession of a firearm by persons who have committed certain types of felonies. See 720 ILCS 5/24–1.7. Sanders filed a motion to quash arrest and suppress evidence, arguing that the traffic stop was unjustified. As indicated earlier, the trial court denied the motion.

The Court summarizes the evidence introduced at the hearing on Sanders's motion to quash arrest and suppress evidence in order to provide background for consideration of Sanders's habeas corpus petition. Officer John Dolan testified that a woman flagged him down while he was on patrol in the vicinity of Normal Avenue and 79th Street in Chicago. He had never met the woman before, and described her as black, about five feet five inches tall, wearing black clothes and "heavy set." Officer Dolan spoke with the unidentified woman for approximately fifteen seconds and the woman remains unidentified. The woman told Officer Dolan that she had seen a short black man, aged 30 to 35 years old, wearing a red coat and blue pants, put a machine gun into the backseat of a gold or brown Chrysler. She said that the Chrysler had license plate number 1739050 and that it had traveled north on Halsted Street.

Officer Dolan radioed the information from the tip to Officers John Wagner and Triantafillo, who were nearby.[1] Two or three minutes later, Officer Dolan saw a Chrysler, driven by Sanders, stopped at a light at the intersection of 74th and Halsted.

---

[1] The officer's name is also spelled in the record as "Friantafillo."

Officers Dolan and Wagner placed their vehicles in the front and back of the Chrysler and directed Sanders to exit the car. As Sanders exited the car, Officer Wagner yelled "gun," and Officer Triantafillo recovered a machine gun from the car. A large black "AR150-type" machine gun with a scope, an infrared laser, and a magazine containing ten rounds was recovered from a car. A bag recovered from the car contained two additional magazines.

Sanders was taken into custody and, during a subsequent conversation, told Officer Wagner that Clifton "Flex" Hall had paid him fifteen dollars to drive the Chrysler from one location to another. The Chrysler was registered to Hall.

As indicated earlier, the trial court denied the motion to quash arrest and suppress evidence. After a bench trial, the judge found Sanders guilty as charged under the armed habitual criminal statute. The judge imposed a ten year prison term.

On appeal, Sanders argued that the trial court erred in denying his motion to quash arrest and suppress evidence. He argued that the tip of an anonymous woman was not sufficient to give rise to the reasonable suspicion needed to justify the traffic stop. The Illinois Appellate Court rejected this contention and affirmed the conviction.

Sanders filed a *pro se* petition for post-conviction relief. He asserted seven claims, only one of which is repeated in his federal habeas corpus petition. In that claim, Sanders alleged that the state had violated his due process rights by allowing the destruction of video surveillance recordings taken in the area of 79th and Halsted and 79th and Vincennes on October 5, 2008, the date of his arrest. Sanders contends that when he tried to obtain the video footage on September 9, 2009, he was informed that it no longer existed. Attached to Sanders's petition is a letter from the Chicago Police

Department's Office of Legal Affairs, stating that under Chicago Police Department Special Order 05-12, surveillance footage from Police Observation Devices (PODs) is retained for no more than fifteen days in the absence of a subpoena or court order for the footage. Sanders was indicted twenty-one days after his arrest, so this video footage had already been destroyed by the time of his indictment.

The circuit court summarily dismissed Sanders's petition for post-conviction relief, ruling that Sanders had not shown that the destruction of the video footage was done in bad faith. Sanders filed a notice of appeal, and the Office of the State Appellate Defender was appointed to represent him on appeal. The State Appellate Defender filed a motion for leave to withdraw, asserting that an appeal would be without arguable merit. The Illinois Appellate Court granted the motion to withdraw and affirmed the circuit court's dismissal of the petition.

Sanders also filed a *pro se* petition for relief from judgment pursuant to 735 ILCS 5/2-1401. This petition did not raise any claims that are repeated in Sanders's federal habeas corpus petition. The state trial court denied the petition on February 5, 2013, and the appellate court dismissed the appeal for lack of jurisdiction.

**B.    Sanders's habeas corpus petition**

On February 27, 2014, Sanders filed a *pro se* petition for writ of habeas corpus, asserting a single claim. Sanders argues that the Illinois Appellate Court unreasonably applied *Brady v. Maryland*, 373 U.S. 83 (1963), in rejecting his claim that the state violated his due process rights by destroying video footage that was favorable to his defense. He contends that the Chicago Police Department was aware that no criminal defendant could be indicted within the fifteen days that POD video surveillance program

4

keeps the footage it records, and thus the state is effectively turning a blind eye to a procedure that deprives defendants of potentially favorable evidence. Sanders also argues that the appellate court did not properly evaluate the strength of the evidence against him when it found that the video in question was not material to the outcome of the proceedings.

In response, the state argues that Sanders's claim is not correctly viewed as a claim of failure to disclose evidence under *Brady* but rather is actually a claim of failure to preserve evidence that may have been favorable to the defense. Thus, the state argues, the absence of bad faith on the part of the state defeats the claim.

In his reply, Sanders argues that the state acted in bad faith by turning a blind eye to the protocol that results in destruction of video surveillance evidence and that the bad faith requirement of *Youngblood v. Arizona*, 488 U.S. 51 (1988), can be disregarded because the video footage was highly material to his case.

## Discussion

A petitioner is entitled to a writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A federal court may issue a writ of habeas corpus on a claim that was adjudicated on the merits in state court proceedings only if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id.* § 2254(d); *see also Burt v. Titlow,* 134 S. Ct. 10, 15 (2013).

5

Sanders contends that the Illinois Appellate Court unreasonably applied *Brady v. Maryland* in rejecting his claim that the state violated his due process rights by destroying the video footage. To prevail, Sanders must show that there was "no reasonable basis" for the Court's decision. *Cullen*, 131 S. Ct. at 1402-03. The appellate court summarily affirmed the circuit court's dismissal of Sanders's claim, but the "unreasonable application" test "applies even where there has been a summary denial." *Id.* at 1402. In this situation, "a habeas court must determine what arguments or theories . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2010).

**A.    Due process violation**

Sanders frames the destruction of the video footage as a violation under *Brady v. Maryland*, 373 U.S. 83 (1963), which holds that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Id.* at 87. This case, however, does not present an issue of failure to disclose favorable evidence, because Sanders has not shown that the destroyed evidence was ever in the state's possession, or that the video footage would have been favorable to him. Rather, the issue is whether the state violated due process by failing to preserve potentially exculpatory evidence.

As a result, Sanders's claim is governed not by *Brady*, but by the standard set out in *Arizona v. Youngblood*, 488 U.S. 51 (1988). There, the Supreme Court held "that

unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988). *Youngblood* "requires the defendant to demonstrate: (1) bad faith on the part of the government; (2) that the exculpatory value of the evidence was apparent before the evidence was destroyed; and (3) that the evidence was of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *United States v. Stewart*, 388 F.3d 1079, 1085 (7th Cir. 2004) (internal quotation marks omitted).

Sanders relies upon Justice Stevens' concurrence in *Youngblood* to argue that a showing of bad faith is not necessary in this case because the video footage was highly material to his case. The Court, however, is bound by the majority's opinion in *Youngblood*, which requires a showing of bad faith.

Sanders argues that the state's bad faith can be inferred from the fact that it allowed the Chicago Police Department to implement a "defective, unconstitutional surveillance policy, where the evidence is destroyed within 15 days of an accused arrest, suppressing evidence from the State's prosecuting attorneys, defense attorney, and the courts." Pet'r's Reply at 13. The Supreme Court analyzed policies that provide for the destruction of evidence in *California v. Trombetta*, 467 U.S. 479 (1984), and it concluded that to prevail on a due process claim in these circumstances, a defendant must establish that the destruction or non-preservation policy was created in bad faith.

In *Trombetta*, the Supreme Court considered a police department policy that called for the destruction of breath samples obtained from breathalyzers used in sobriety tests. The Court concluded that the authorities "did not destroy respondents'

7

breath samples in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny." *Id.* at 488. The Court also noted that "[t]he record contain[ed] no allegation of official animus towards respondents or of a conscious effort to suppress exculpatory evidence." *Id.* Because the destruction of evidence was done "'in good faith and in accord with their normal practice,'" there was due process violation. *Id.* (quoting *Killian v. United States*, 368 U.S. 231, 242 (1961)).

The record in Sanders's case contains no evidence that the video footage destruction policy was created to circumvent defendants' rights or suppress exculpatory evidence. For this reason, and because the record reflects that the footage was destroyed pursuant to established protocol, the appellate court's summary rejection of Sanders's due process claim was not an unreasonable application of federal constitutional law.

**B.    Certificate of appealability**

When a district court enters a final judgment that dismisses a prisoner's habeas corpus petition, it must issue or deny a certificate of appealability (COA). To obtain a COA, a petitioner must make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A court should grant a COA if "reasonable jurists could debate whether (or . . . agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In Sanders's case, because the precedent requiring a showing of bad faith on the part of the state is clear and the absence of such a showing is readily apparent, the Court finds that reasonable jurists could not debate whether the petition should have been resolved in a different

manner. The Court therefore declines to issue a certificate of appealability.

**Conclusion**

For the foregoing reasons, the Court denies Sanders's petition for a writ of habeas corpus. The Court also declines to issue a certificate of appealability. The Clerk is directed to enter judgment in favor of respondent.

```
_____
        MATTHEW F. KENNELLY
        United States District Judge
```

Date: December 1, 2014